Filed 1/27/23  P. v. Manetta CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094669 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE019831) |
| v. | |
| RYAN JAY MANETTA, | |
| Defendant and Appellant. | |

A jury found defendant Ryan Jay Manetta guilty of assault with intent to commit rape or penetration with a foreign object (Pen. Code, § 220),[1] and the trial court sentenced him to the upper term of six years in prison.

---

[1] Further undesignated statutory references are to the Penal Code.

On appeal, defendant argues he was prejudiced by erroneous jury instructions and requests that we remand his case for resentencing in light of the passage of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567). The Attorney General agrees with defendant's request for resentencing but disagrees as to the instructional error claims.

We agree with the parties that remand for resentencing is required; we will vacate the sentence, remand for resentencing, and otherwise affirm the judgment.

**BACKGROUND**

A June 18, 2021, amended information charged defendant with a single count of assault with the intent to commit rape or penetration with a foreign object. (§ 220.) The People presented testimony establishing that within hours of checking into a substance abuse recovery center on October 30, 2019, defendant sexually assaulted an employee of that center, O.D.

O.D. had been keeping watch on defendant, who was experiencing symptoms of withdrawal, but was oriented as to time and place. At one point, O.D. found defendant lying on the floor in the lobby and helped him to his feet. Defendant was unsteady, and O.D. helped him walk down the hallway towards his room. Defendant pushed O.D. against the wall and pulled her leggings partially down. They fell to the ground, and he lay on top of her. Defendant touched O.D.'s vagina over her clothes. "His fingers and hands were all over" her "vagina[l] area." O.D. felt him using his fingers to touch her vaginal opening and felt his finger inside her. She was scared, and did not consent to the contact. She remained afraid of defendant at trial.

O.D. screamed for help and told defendant to stop, but defendant continued touching her vagina and trying to disrobe them both. O.D. got away when another staff member put defendant in a chokehold. Video surveillance of the assault was played for the jury and admitted into evidence.

2

Defendant was taken into custody and later interrogated. A video of that interrogation was also played for the jury and admitted into evidence. Defendant's brother-in-law testified to defendant's prior efforts at rehabilitation and defendant's condition the day the brother-in-law took him to the center. He had found defendant in bed, "pretty much unresponsive" and "not making any sense" and "like an extremely groggy teenager"; it appeared he was "either on something or coming off something." During the drive, defendant alternated between periods of acting normal and speaking incoherently and did not "appear to be in touch with reality."

Defendant testified about his struggles with drugs (such as oxycontin and Xanax) and alcohol, which included unsuccessful attempts at rehabilitation. He told the jury that after he arrived at the rehabilitation facility, a doctor prescribed several medications for him, including gabapentin, which were given to him that evening around midnight. He could not sleep, and had fits where he believed he was a deity who could see the future. O.D. checked on him repeatedly and was kind to him, and he came to view her as an "angel" who had been "sent to" him. He testified as to the charged assault that while O.D. was helping him, he had tried to turn her around so that he could "embrace" her, but instead he grabbed at her waist and ended up grabbing the waistband of her pants. He "wanted a hug or affection." When it became clear that she did not want to hug him, he released her and collapsed to the ground dejected, unintentionally taking her with him. Defendant denied pulling down O.D.'s pants, wanting to have sex, touching O.D.'s vagina, penetrating her with his finger, or any intent to do those things. He explained he had a delayed reaction such that he thought he got up immediately, while acknowledging the video showed differently.

Defendant also offered the expert testimony of Dr. Krystal Piumatti who diagnosed defendant as suffering from "adjustment disorder with mixed anxious and depressed moods," plus "an unspecified personality disorder with histrionic features." Piumatti opined that defendant had been suffering from medication-induced psychotic

3

disorder and anxiolytic benzodiazepine withdrawal with perception distortion--meaning he was "not processing the entirety and the reality of the information"--at the time of his arrest.

The jury found defendant guilty as charged. At sentencing, the trial court imposed the upper term of six years in prison after determining that "the crime involved great violence, great bodily harm, threat of bodily harm, or other acts disclosing a high degree of cruelty, viciousness, and callousness." The court also opined that defendant abused a position of trust and the victim was particularly vulnerable because she was caring for defendant at the rehabilitation facility, and he had exploited the situation.

Defendant timely appealed; the case was fully briefed on November 15, 2022, and assigned to this panel shortly thereafter. The parties waived argument and the case was submitted on January 23, 2023.

## DISCUSSION

### I

### *Claims of Instructional Error*

Defendant argues the trial court erred: (1) by failing to instruct the jury of the precise specific intent required for assault with intent to commit rape or penetration by a foreign object; and (2) by instructing the jury with language consistent with a negligence standard. His specific point as to the first claim appears to be that pattern instruction CALCRIM No. 890 was "misleading and ambiguous" as to the rape component because it "failed to instruct the jury that [defendant] had to have the specific intent to put his penis in the victim to be guilty." His specific point as to the second claim is that the reference to what a "reasonable person" would realize as "directly and probably" resulting in the application of force to someone within CACRIM No. 890 is a "negligence standard" that "does not require intentional conduct, but only likely outcome." This point is also offered in support of his argument that CALCRIM No. 890

4

was erroneous as given in this case, because it did not require defendant's conduct be intentional. We disagree, as we next explain.

A. *Background*

As relevant here, the trial court instructed the jury with CALCRIM Nos. 251 (Union of Act and Intent: Specific Intent or Mental State), 890 (Assault with Intent to Commit Specified Crimes [Rape]), 1000 (Rape by Force, Fear, or Threats), 3426 (Voluntary Intoxication), and 3428 (Mental Impairment: Defense to Specific Intent or Mental State).

CALCRIM No. 251 instructed the jury that in order to find defendant guilty of count one, assault with intent to commit rape or penetration by a foreign object, it had to find that defendant "not only intentionally commit[ted] the prohibited act," but also did so "with a specific intent," that was "explained in the instruction for that crime."

The "instruction for that crime" referred to in CALCRIM No. 251 (i.e., count one, assault with intent, the only crime charged in the amended information) was CALCRIM No. 890, which the court read to the jury as follows: "So this instruction, 890, pertains to Count 1. [¶] The defendant is charged with [assault with] intent to commit rape or sexual penetration by a foreign object in violation of Penal Code section 220(a). To prove that the defendant is guilty of this crime, the People must prove that, number one, the defendant did an act that by its nature would directly and probably result in the application of force to a person. Two, the defendant did that act willfully. Three, when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone. Four, when the defendant acted, he had the present ability to apply force to a person. Five, *when the defendant acted, he intended to commit rape or penetration by a foreign object.*

"Someone commits an act willfully when he or she does it willingly or on purpose. The terms application of force and apply force mean to touch in a harmful or offensive

5

manner.  The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind.  No one needs to actually have been injured by the defendant's act, but if someone was injured, you may consider that fact, along with all of the other evidence in deciding whether the defendant committed an assault. *To decide whether the defendant intended to commit* rape or penetration by a foreign object*, please refer to Instruction[] 1000 . . . [*to*] define those terms.*"  (Italics added.)

CALCRIM No. 1000 was then read:  "The defendant is charged in Count 1 with assault with intent to commit rape by force in violation of Penal Code 220(a).  *The defendant is guilty of rape if; one, the defendant had sexual intercourse with a woman*; two, he and the woman were not married to each other at the time of the intercourse; three, the woman did not consent to the intercourse;  and four, the defendant accomplished the intercourse by force to the woman or someone else.  *Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis*. Intercourse is accomplished by force if a person uses enough force to overcome the woman's will."  (Italics added.)

The jury was also instructed with CALCRIM No. 3426 that it could consider any evidence of defendant's voluntary intoxication "*only in deciding whether the defendant acted with the intent to commit rape* or penetration by a foreign object for Count 1" and that "[i]n connection with the charge of Penal Code Section 220, *the People have the burden of proving beyond a reasonable doubt that the defendant acted with the intent to commit rape* or penetration by a foreign object."  (Italics added.)

The trial court also read CALCRIM No. 3428, which told the jury in relevant part that it could consider any evidence of defendant's mental disease or disorder "*only for the limited purpose of deciding whether at the time of the crime charged the defendant acted with the intent or mental state required for that crime*" and reiterated that "*[t]he People*

6

*have the burden of proving beyond a reasonable doubt that defendant acted with a required intent or mental state, specifically the intent to commit rape* or penetration by a foreign object." (Italics added.)

The People's closing focused in pertinent part on defendant's intent to commit either rape or sexual assault, arguing that the evidence established he intended to pull down O.D.'s pants and penetrate her with his finger, all for a sexual purpose. The defense argued the case came "down to specific intent" and whether defendant intended to "get something on [his] body inside of her vagina." Counsel discussed the specific intent requirement, including the possibility that defendant's mental impairment kept him from forming that intent, and argued at length that defendant did not have the mental ability to form the intent to commit rape, and even if he did, defendant did not intend rape.

B. *Analysis*

Defendant argues that CALCRIM No. 890 as given did not adequately convey to the jury that in order to find assault with intent to either rape O.D. or penetrate her with a foreign object it needed to find that defendant had to "specifically intend to insert his penis in O.D.'s vagina or specifically intend to penetrate her with a foreign object." He focuses on the language of the instruction referencing rape, arguing its lack of the specific language regarding intent to insert a penis as well as its incorporation of "negligence principles" rendered it erroneous. He adds that because there were two "theor[ies] of guilt" and one (that defendant had the intent to commit rape) was legally inadequate, reversal is required.

"A trial court must instruct the jury, even without a request, on all general principles of law that are ' "closely and openly connected to the facts and that are necessary for the jury's understanding of the case." ' " (*People v. Burney* (2009) 47 Cal.4th 203, 246.) However, the trial court has no sua sponte duty to modify legally valid instructions. (See *People v. Lang* (1989) 49 Cal.3d 991, 1024 ["A party may not

7

complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language"], abrogated on other grounds in *People v. Diaz* (2015) 60 Cal.4th 1176, 1190; *People v. Lee* (2011) 51 Cal.4th 620, 638 [defendant's failure to request clarification of an instruction reflecting a correct statement of law forfeits appellate claim based on court's failure to revise that instruction].) We determine the propriety of the jury instructions de novo by reviewing the entirety of those instructions and the record to determine whether they accurately state the law and whether it is reasonably probable that the jury applied the instructions in an improper manner. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

As a preliminary matter, the Attorney General argues forfeiture; as this challenge to the pattern instruction was not raised below, the challenge is forfeited on appeal unless the alleged error affects defendant's substantial rights. (*People v. Mitchell, supra*, 7 Cal.5th at p. 579; § 1259.) Substantial rights are affected if " 'the error resulted in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818.' " (*People v. McCoy* (2013) 215 Cal.App.4th 1510, 1535.) Although defendant argues against forfeiture, to the extent that he argues CALCRIM No. 890 was generally legally correct but should have been tailored to the context of his case, section 1259 does not excuse his failure to seek modification. While a defendant may generally raise a claim of "instructional error affecting his or her substantial rights" on appeal without objecting below, this does not apply to an argument that the instruction, which was "correct in law[,] was too general or incomplete." (*People v. Buenrostro* (2018) 6 Cal.5th 367, 428.) Such claim must be presented below or is forfeited on appeal. (*Ibid.*)

Here, we see no miscarriage of justice. Indeed, we see no error.

As we have set forth *ante*, as relevant to defendant's claim on appeal, the trial court instructed the jury that to prove defendant was guilty as charged, the People would have to prove that "*when the defendant acted, he intended to commit rape*" (CALCRIM

No. 890, italics added) and then referred the jury to CALCRIM No. 1000 "[*t*]*o decide whether the defendant intended to commit rape*." (Italics added.) The court next told the jury in connection with its reading of CALCRIM No. 1000, which explained the requirements of proving the crime of rape by force, fear, or threats, that "defendant is charged in Count 1 with assault with intent to commit rape by force in violation of Penal Code 220(a). *The defendant is guilty of rape if; one, the defendant had sexual intercourse with a woman* . . . the woman did not consent to the intercourse; and . . . the defendant accomplished the intercourse by force . . . . *Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis*. Intercourse is accomplished by force if a person uses enough force to overcome the woman's will." (Italics added.)

Thus, considering the instructions to the jury together as a whole, the trial court clearly told the jury that in order to find defendant guilty of assault with the intent to commit rape, the only charge before it, it had to determine defendant specifically intended to commit rape. The court then specified that rape required nonconsensual, forceful sexual intercourse, which the court further defined as any penetration of the "vagina or genitalia by the penis." Given these directions, it is not reasonably likely that the jury understood it could find defendant guilty of assault with the intent to commit rape without determining that defendant had the specific intent to place his penis in the victim's vagina or genitalia. Therefore, defendant has not shown the trial court's instructions, as given, impacted his substantial rights.

This conclusion is strengthened by the trial court's reading of CALCRIM Nos. 3426 and 3428, each of which referenced the need for the jury to determine whether defendant possessed the requisite intent at the time of the charged crime. Further, as we have described, the parties' closing arguments focused at length on whether the People had established that defendant acted with the *specific intent* to either rape O.D. or

9

penetrate her with a foreign object (his fingers), or alternatively, whether defendant was incapable of forming that intent.

Finally, to the extent that we understand defendant's negligence argument, it fails to persuade. As we have described, CALCRIM No. 890, in its entirety and in conjunction with the other instructions given to the jury, fully advised the jury of the intent requirement. Although defendant quotes several small portions of the instruction, noting for each that "[t]his portion of CALCRIM No. 890 did not communicate to the jury that [defendant] had to have the specific intent to insert his penis in [O.D.]'s vagina," as we have discussed *ante*, the proper analysis considers the instructions in their entirety. This argument is undeveloped and borders on frivolous.

We presume the jury followed all of the instructions it was properly given (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433); here, the jury was adequately instructed as to the required intent.

II

*Senate Bill No. 567*

Defendant also asks that we vacate his sentence and remand for a full resentencing hearing in light of the legislative changes brought about by Senate Bill No. 567. The Attorney General agrees that Senate Bill No. 567 applies retroactively and that remand is necessary. We agree with the parties.

Effective January 1, 2022, when a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the trial court must impose a term not exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term exceeding the middle term and the facts underlying those aggravating circumstances: (1) have been stipulated to by the defendant; (2) have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial; or (3) relate to the defendant's prior convictions and are based on a certified record of conviction. (§ 1170, subd. (b)(1)-(3); Stats. 2021, ch. 731, eff. Jan. 1, 2022.)

10

The Attorney General agrees that the amended version of section 1170, subdivision (b) applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal. (See *In re Estrada* (1965) 63 Cal.2d 740, 745; *People v. Flores* (2022) 75 Cal.App.5th 495, 500 [holding Senate Bill No. 567 applies retroactively to nonfinal convictions on appeal].) He also agrees, as do we, that remand for resentencing is appropriate. Here, the trial court imposed an upper term sentence after opining as to certain factors related to defendant's crime that we have set forth *ante*. None of these findings were made in compliance with Senate Bill No. 567 (see amended § 1170, subd. (b)), and we cannot properly hold that the jury would have found the aggravating factors relied upon by the court to be true on this record. Accordingly, we must vacate defendant's sentence and remand for resentencing. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1110, 1115; *People v. Garcia* (2022) 76 Cal.App.5th 887, 902.)

## DISPOSITION

Defendant's sentence is vacated and the matter remanded for a full resentencing hearing in compliance with the current law. The judgment is otherwise affirmed.

> /s/
> Duarte, J.

We concur:

/s/
Robie, Acting P.J.

/s/
Boulware Eurie, J.

11